UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-116-TBR

**DAMIEN A. SUBLETT,**                                                                   **PLAINTIFF**

**v.**

**LINDA S. GREEN,**                                                                **DEFENDANTS**
**CHRIS HATTON,**
**JON TANGEROSE,**

## MEMORANDUM OPINION AN ORDER

This matter is before the Court upon a motion by Defendants, Linda Green, Chris Hatton, and Jon Tangerose ("Defendants"), for summary judgment. [DN 33]. Plaintiff, Damien Sublett, has responded to the motion. [DN 37]. The Defendants have filed their reply. [DN 38]. Fully briefed, Defendants' motion is ripe for review, and for the following reasons, it is **GRANTED IN PART and DENIED IN PART.**

## BACKGROUND

The Plaintiff in this case, Damien Sublett, is an inmate at Little Sandy Correctional Complex ("LSCC"). Defendant Linda Green was the Unit Administrator of the Restricted Housing Unit ("RHU") at Western Kentucky Correctional Complex ("WKCC") during the period relevant to this action. [DN 33-7]. Defendant Jon Tangerose is a Unit Administrator at WKCC, sometimes serves as a grievance coordinator, and sometimes supervises the inmate legal library. [DN 33-9]. Defendant Chris Hatton is the Deputy Warden of Programs for WKCC. [DN 33-6]. Plaintiff filed this action on August 3, 2017 under 42 U.S.C. § 1983 claiming that Defendants violated several of his constitutional rights. [DN 33-1 at 1]. Before being transferred to LSCC, Plaintiff was an

1

inmate at WKCC. *Id.* During his time at WKCC, Plaintiff spent some time in the RHU where he was in contact with the Defendants in this case. [DN 6 at 2]. Damien Sublett is a prolific filer. Plaintiff had at least six civil actions against prison officials working their way through the courts while he was housed in RHU. [DN 1-1 at 1-2]. Plaintiff alleges that Defendants in this case took adverse action against him in retaliation for these civil actions and grievances against prison officials. [DN 6; DN 18; DN 25]. More specifically, Plaintiff claims that Defendants unlawfully limited his access to legal resources. *Id.* Plaintiff also claims that one of his grievances against a prison official was wrongfully rejected. *Id.* Defendants have now filed a motion for summary judgment. [DN 33]. For the following reasons, Defendants' motion for summary judgment is **GRANTED IN PART, and DENIED IN PART.**

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact

could reasonably find for the plaintiff. See *id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir.1996).

## DISCUSSION

This case involves a series of complaints, supplements to complaints, and amended complaints by Plaintiff where many of the parties have changed, and the claims brought by Plaintiff have also changed. In his Amended Complaint [DN 18], Plaintiff states that: "The only Defendants in the above style action are as follow; Jon Tangerose, Linda S. Green and Chris Hatton; first Amendment retaliation." [DN 18-1 at 5]. Therefore, Plaintiff has abandoned all other claims.

In the Supplemental and Amended Complaints, Plaintiff brings five claims. First, Plaintiff claims that his "original grievance" #8479 was not returned to him when he was released from RHU back into the general prison population. Second, Plaintiff claims that Tangerose wrongfully rejected his "original grievance" #8479. Third, Plaintiff claims that Tangerose, Green, and Hatton denied him access to the legal library and use of the LexisNexis computer. Fourth, Plaintiff claims that he gave two affidavits to a prison official to make copies, but the affidavits were never returned to him. Finally, Plaintiff argues that, on July 10, 2017, Green directed prison officials to enter Plaintiff's cell and confiscate all of Plaintiff's legal materials.

Defendants argue that they are entitled to summary judgment on each claim for two reasons. First, Defendants argue that Plaintiff has failed to exhaust the administrative remedies available to him and therefore the Court must grant summary judgment to Defendants pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e, *et seq.*. Under *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), a court must dismiss a prisoner's claim if he has failed to properly exhaust the administrative remedies available to him. "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedures. . . ." *Id.*

In this case, Plaintiff must grieve each of his claims in compliance with Kentucky Corrections Policies and Procedures ("CPP") 14.6. Most important to this case is the CPP's requirement that the grievant "shall include *all aspects* of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1." CPP 14.6(II)(J)(5) (emphasis added). The Sixth Circuit has interpreted this requirement as follows:

> [W]e would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, it is sufficient for a court to find that a prisoner's grievance *gave prison officials fair notice* of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.

*Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation omitted) (emphasis added). In other words, "[a] grievance must provide notice of the problem at hand. . . ." *Pruitt v. Holland*, No. 10-CV-111-HRW, 2011 U.S. Dist. LEXIS 621, 2011 WL 13653, at *5 (E.D. Ky. 2011) (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)). "Summary judgment is appropriate only if

defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin* 639 F.3d 236, 240 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).

Second, Defendants argue that even if Plaintiff has exhausted his remedies, he has failed to raise a dispute of material fact regarding each element of his retaliation claims. "In a retaliation claim . . . the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." *Thaddeus-X v. Blatter*, 174 F.3d 378, 394 (6th Cir. 1999) (en banc) (emphasis in original).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id*. The Court will address each of Plaintiff's claims individually.

### A. Plaintiff claims that his "original grievance" #8479 was not returned to him when he was released from RHU back into the general prison population.

Plaintiff has failed to exhaust the available administrative remedies regarding his first claim. Plaintiff had a grievance process available to him through CPP 14.6. However, there is no evidence on the record that raises a genuine dispute of fact on whether Plaintiff filed a grievance regarding Defendants' failure to return his original copy of grievance #8479 when he was released into the general prison population. Therefore, summary judgment is **GRANTED** regarding this claim.

### B. Plaintiff claims that Tangerose wrongfully rejected his "original grievance" #8479.

5

In Plaintiff's second claim, he alleges that Tangerose wrongfully rejected grievance #8479. In grievance #8479, Plaintiff requested to be allowed to sue a prison official. Tangerose rejected grievance #8479 because he claims Plaintiff suggested a specific form of disciplinary action in violation of CPP 14.6. Plaintiff now argues that Tangerose wrongfully rejected grievance #8479 because he did not suggest a specific form of disciplinary action.

Because Plaintiff does not specify otherwise, and because an alternate theory of liability is unidentifiable from the complaints, the Court assumes that Plaintiff brings this claim under a retaliation theory like the rest of his claims. To survive a motion for summary judgment in a retaliation claim, the Plaintiff must allege the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X*, 174 F.3d 394. But Plaintiff does not allege that Tangerose rejected the grievance because Plaintiff engaged in a protected activity. Therefore, there is no dispute of fact regarding the third element of this retaliation claim and summary judgment is **GRANTED**.

### C. Plaintiff claims that Green, Tangerose, and Hatton denied him access to the legal library and use of the LexisNexis computer.

In his Amended Complaint, Plaintiff claims that Tangerose told him "that the lexis nexis, are for inmate's who don't file frivolouse grievance, like what you'r claiming against cto Yate." [DN 18-1 at 4]. Plaintiff also alleges that Tangerose informed him that "he would not get any case law from the lexis Nexis to assist Sublett in a suit against c-to yate or his grievance." *Id.* at 4-5. In his First Supplemental Complaint, Plaintiff alleges that "Green refused to allow Sublett legal

materials." [DN 6]. Finally, Plaintiff alleges that Hatton "inform sublet that he would not be given any legal material to assist him in his suit or grievance against cto Yates." *Id.* at 4.

Defendants argue that Plaintiff has failed to exhaust his administrative remedies regarding this claim. The Court disagrees. In grievance #8511, Plaintiff alleges:

> On Jun. 30, 2017, Sublett spoke with UA Linda Green about Sublett needing legal material from the legal library. Sublett has also spoken with Deputy Warden Hatton in obtaining caselaw from the legal library and Sublett has spoken with UA Jon Tangerose about obtaining legal material from the legal library. Each official has denied Sublett access to the legal library so Sublett cannot access the court in Sublett pending law suits.

[DN 33-5 at 3]. This grievance gives the prison administration sufficient notice to investigate the problem and try and resolve the issue. It is not necessary, as Defendants argue, for Plaintiff to include the specific details of the conversations with each official in his grievance. Rather, it is only necessary for a prisoner's grievance to give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell*, 450 F.3d at 654. "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher*, 639 F.3d at 240. There is a genuine dispute of material fact regarding whether Plaintiff exhausted his administrative remedies with this claim. Grievance #8511 puts prison officials on notice that Plaintiff was allegedly being denied legal materials and access to the legal library by Green, Hatton, and Tangerose. This notice is sufficient to allow Prison officials to fully investigate the alleged misconduct.

Defendants argue that this claim should not be allowed to proceed because "[s]taff who processed Grievance #8511 were not put on notice that they were supposed to be investigating events that allegedly happened more than a month earlier." [DN 38 at 4]. The Court is not

7

convinced by this argument. Grievance # 8511 puts prison officials on notice that Green, Hatton, and Tangerose have allegedly "denied Sublett access to the legal library so Sublett cannot access the court in Sublett pending law suits." An investigation into this grievance would uncover misconduct that occurred in May as well June, and therefore Plaintiff exhausted his administrative remedies.

Defendants' argument that Plaintiff failed to exhaust his administrative remedies because his grievance did not give notice to prison officials that the grievance was untimely also fails. Under CPP 14.6, "[a] grievance about a personal and specific incident shall be filed within five (5) business days after the incident occurs." [DN 33-8 at 8]. Defendants argue that "because Sublett did not alert staff who processed Grievance # 8511that [sic] he was trying to grieve events he alleges took place in May, they were denied the opportunity to reject the grievance on the ground that it was untimely." [DN 38 at 4].

In other words, Defendants argue the lack of specificity in grievance #8511 denied prison officials the "fair opportunity" to reject the grievance based on its untimeliness. But this argument contains a fatal flaw: Even though grievance #8511 specified that one alleged instance of misconduct occurred on June 30 and the grievance was filed on July 12—outside of the five-business-day period allowed by CPP 14.6—prison officials nonetheless chose to address the grievance on the merits. "[P]rison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits." *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010)). Because prison officials waived the untimeliness of the June 30 allegation, they cannot succeed on their argument that Plaintiff did not exhaust his administrative remedies because he denied prison officials the fair opportunity to reject the grievance based on the untimeliness of the rest of his grievance. The

8

prison officials had a fair opportunity to reject grievance #8511 due to its untimeliness; they could have rejected it due to the clear procedural default on the face of the grievance. Instead, prison officials addressed the grievance on the merits and therefore they are foreclosed from collaterally attacking Plaintiff's exhaustion on the theory of procedural default.

Defendants also argue that, even if Plaintiff has exhausted his administrative remedies, there is no genuine dispute of material fact regarding this claim and therefore Defendants are entitled to judgment as a matter of law. This Court disagrees. First, Defendants argue that Tangerose was not in charge of the legal library and the LexisNexis system when the alleged misconduct took place, did not control access to these resources, and therefore could not have denied Plaintiff access to them. [DN 38 at 7]. Defendants support this argument with Tangerose's affidavit which states:

> Sublett's assertion that I was in charge of maintain [sic] the LexisNexis system in May 2017 is also false. Again, I was not even the supervisor of the legal library at the time. However, I do recall that there were some access problems with the LexisNexis system in June 2017.

[DN 33-9 at 3]. Tangerose's affidavit also explains the procedure an inmate in RHU gains access to the legal library:

> And even [if] I had been the supervisor of the inmate legal library in May 2017, Sublett would not have requested legal materials from me. Inmates housed in the Restrictive Housing Unit (RHU) do not request legal materials directly from the supervisor of the legal library. They make their requests to inmate legal aids who then retrieve the materials. So long as the inmate legal aides do their jobs, the supervisor of the legal library never knows which inmates have requested legal materials and what those legal materials consist of.

*Id.* at 3-4. On the other hand, Plaintiff offers his own explanation of the authority of each Defendant and the procedures regarding the legal library:

> While confined, in RHU Sublett is required, to request any legal material from Green, that request must be approved by Hatton, and that access to the legal library is controlled by Tangerose. From April 27 through July 31, 2017, Sublett has submitted legal material request forms to Green and that, Green, refused to allow

9

> Sublett legal material's. Hatton informed Sublett, that Sublett would not be supplied with legal material to assist Sublett in his Suit's against prison personnel. . . Each defendant, Green, Tangerose and Hatton, personnaly [sic] informed Sublett, that Sublett would not get any assistance in Sublett, Lawsuit's against W.K.C.C. officials.

[DN 6 at 2]. Plaintiff further alleges: "Unit Administrator Jon Tangerose is the Unit Administrator over the inmate legal library where all Legal material is kept and it is Mr. Tangerose position to maintain the maitance [sic] of the lexis Nexis So that inmates can have access to legal material while House in ("RHU")." *Id.* Defendant's argue that "Sublett has offered no proof, beyond his own self-serving assertions, that UA Tangerose denied him access to LexisNexis." [DN 38 at 7]. But Defendants have failed to offer any proof, beyond Tangerose's self-serving affidavit, that UA Tangerose did not deny Plaintiff access to LexisNexis. In fact, Defendants rely entirely on each defendant's affidavit to refute Plaintiff's affidavits. Defendants have not identified an absence of a dispute of material fact but instead ask the Court to believe the Defendant's story over the Plaintiff's. But the Court is required to view factual evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, (1986); *Warf v. Bd. of Elections*, 619 F.3d 553, 558 (6th Cir. 2010).

Second, Defendants argue that "the only limitation Sublett had to the LexisNexis system were caused by problems with the system itself." [DN 38 at 7]. In his affidavit, Tangerose says "I do recall that there were some access problems with the LexisNexis system in June 2017." [DN 33-9 at 3]. But Plaintiff alleges in his affidavit that Tangerose deliberately prevented him from gaining access to LexisNexis and the legal library. [DN 6 at 2]. For example, Plaintiff alleges that:

> Sublett, then, requested case law from the lexis Nexis computer in the legal library Tangerose inform Sublett, that the lexis Nexis, are for inmate's who dont file frivolouse grievance, like what you'r claiming against cto Yate. Sublett then informed Tangerose that Sublett needed a copy of the federal Rules of Civil procedure, Tangerose informed Sublett that it could only be obtain from lexis and that lexis is not accessbile to Sublett, because Sublett is in RHU.

10

[DN 18-1 at 4]. Again, the parties have submitted competing affidavits and this is an issue more appropriately determined by the trier of fact at trial. Defendants have not met their burden of proving that there is an absence of genuine dispute of material fact regarding whether technical difficulties were the reason Plaintiff was denied legal materials, if Defendant was denied legal materials.

Defendants and Plaintiff have each offered affidavits supporting their version of the facts of this claim. A trier of fact may find one or the other to be more credible, but that is not an appropriate determination at the summary judgment stage. Instead, it is the burden of the moving party to show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Because the Defendants have failed to meet this burden, their motion for summary judgment regarding Plaintiff's claim that Green, Tangerose, and Hatton denied him access to the legal library and use of the LexisNexis computer in retaliation for his civil actions against prison employees is **DENIED.**

### D. Plaintiff claims that he gave two affidavits to a prison official to make copies, but the affidavits were never returned to him.

Plaintiff has failed to exhaust the administrative remedies available to him regarding his missing affidavit claim against Defendants Hatton and Green. None of Plaintiff's grievances would give fair notice to prison officials that they need to investigate the possibility that Hatton or Green denied Plaintiff the access to his affidavits. Instead, grievances #8479 and #8482 indicate that prison officials should investigate CTO Yates regarding the missing affidavits. In grievance #8482, Plaintiff alleges that "c.t.o. Yate now refuse to give me Back my Affidavitt." [DN 33-3 at 2]. In

grievance #8479, Plaintiff alleges that Yates had not returned his affidavits and "[t]his action by Yate's is a clear [interference] with a Federal Judiciary proceeding" and requests the right to sue Yates. [DN 33-2 at 2-3]. In grievance #8483, Plaintiff accuses Yates of refusing to return the affidavits. Neither grievance #8479, #8483, nor #8482 alleges that Green and Hatton prevented Plaintiff from having access to the missing affidavits. Grievance #8511 does not even mention the missing affidavits. Because they have proven that Plaintiff did not exhaust his administrative remedies regarding this claim, summary judgment is **GRANTED**.

### E. Green directed prison officials to enter Plaintiff's cell and confiscate all of Plaintiff's legal materials.

Plaintiff has exhausted all administrative remedies available to him regarding his claim that his cell was searched in retaliation for his various grievances and civil actions against prison officials. In grievance #8511, Plaintiff alleges "Linda Green Had Sublett's cell search and All of Sublett court document's have been confiscated. The above action by these official are done in retaliation for Sublett filing PREA's, grievance, and law suit against w.k.c.c. official." [DN 33-5 at 3]. This grievance put prison officials on notice of the problem at issue and the parties alleged to be involved and therefore satisfies the PLRA's exhaustion requirement.

Defendants argue that there is no dispute of material fact regarding the adverse action element of Plaintiff's retaliation claim and that they are therefore entitled to judgment as a matter of law. In their reply, Defendants argue "Sublett has offered no proof, beyond his own self-serving assertions, that he was ever denied 'all' of his legal materials." [DN 38 at 6]. Defendants explain that inmates housed in RHU are allowed "5 inches of legal and personal correspondence" and that

"the RHU staff had allowed Sublett to choose which materials he wanted to keep in his cell within that 5 inch limit, and the rest of Sublett's materials were stored in his property." *Id.* at 5. Therefore, Defendants claim that—to the extent Plaintiff was denied any of his personal legal correspondence—prison officials were enforcing prison policy when they confiscated Plaintiff's legal materials. But Plaintiff claims under penalty of perjury that Green directed prison officials to confiscate *all* his legal material, leaving him with nothing but "general writing paper and pen." [DN 6 at 2]. Therefore, there is a genuine dispute of material fact regarding whether Plaintiff was allowed to keep five inches of legal and personal correspondence. Defendant's motion for summary judgment regarding this claim is **DENIED.**

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [DN 33] is **GRANTED IN PART and DENIED IN PART.**

**IT IS HEREBY ORDERED:**

1. Plaintiff's retaliation claim that his "original grievance" #8479 was not returned to him when he was released from RHU back into the general population is **DISMISSED with prejudice.**

2. Plaintiff's retaliation claim that Tangerose wrongfully rejected his "original grievance" #8479 is **DISMISSED with prejudice.**

3. Plaintiff's claim that his affidavits were never returned to him is **DISMISSED with prejudice.**

4. Defendant's motion for summary judgment [DN 33] is **DENIED regarding all other claims in this action.** Plaintiff has two remaining retaliation claims: (1) that Green, Tangerose, and Hatton denied him access to the legal library and use of the LexisNexis computer; and (2) that Green directed prison officials to enter Plaintiff's cell and confiscate all of his legal materials.

This matter is scheduled for a **telephonic conference** on **February 6, 2019 at 10:00 AM (CT).** The conference will be held telephonically. **Plaintiff, Damien A. Sublett (134575)**, and **Counsel for Defendants** must call **1-877-848-7030** then give the **Access Code 2523122 and #,** then when prompted **press # again** to join the call.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

January 17, 2019

cc: Counsel of Record
cc: Pro Se Plaintiff
 Damien A. Sublett
 134575
 Little Sandy Correctional Complex
 505 Prison Connector
 Sandy Hook, KY 41171